

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

May 17, 1939

Honorable N. J. Dartez, Secretary
State Board of Barber Examiners
Austin, Texas

Dear Sir:

Opinion No. O-796
Re: (1) Can the State Board of Barber Examiners operate without requesting any warrants to be issued against the State Board of Barber Examiners' Fund until such time as it has collected sufficient revenues to take care of outstanding obligations?

(2) Can the State Board of Barber Examiners issue vouchers and request warrants thereon after September 1, 1939, against revenues in the State Board of Barber Examiners' Fund collected after that date, but to pay salaries, traveling expenses and other operating expenses incurred prior to September 1, 1939?

By your letter of May 10, 1939, you submitted for the opinion of this Department the two questions above stated, and in connection therewith pointed out that the State Board of Barber Examiners has, to date, spent approximately $40,000.00 of an appropriation of $62,420.00 for the fiscal year ending August 31, 1939, but have only a cash balance in the State Treasury of slightly over $5,000.00 and cannot operate on a deficit by issuing white warrants. In connection with your second question, the revenue which you desire to issue warrants against, is to be derived after September 1, 1939, from annual renewal fees rather than funds realized from the Minimum Price Act.

The Texas Barber Law was enacted in 1929, and finds a place in our Statutes as Article 734a, Penal Code of Texas. Section

Hon. N. J. Dartez, May 17, 1939, Page 2


23 of this Act provides a registration fee of $10.00, and Section 20 thereof provides a renewal fee of $2.50 payable annually on or before the first day of November. Section 27 of the Texas Barber Law creates the "State Board of Barber Examiners' Fund," with the follow-language:

> ". . . The secretary shall keep a record of all pro-
> ceedings of the Board and shall be the custodian of all
> such records and shall receive and receipt for all money
> collected by the Board. All money so received shall be
> immediately deposited with the State Treasurer, who shall
> credit same to a special fund to be as 'State Board of Bar-
> ber Examiners Fund,' which money shall be drawn from said
> special fund upon claims made therefor by the Board to the
> Comptroller; and if found correct, to be approved by him
> and vouchers issued therefor, and countersigned and paid by
> the State Treasury, which special fund is hereby appropriated
> for the purpose of carrying out all the provisions of this
> Act. That annually at the close of business on August 31
> of each year a complete report of the business transaction
> by the Board showing all receipts and disbursements shall
> be made by the Board to the Governor of the State of Texas.
> . . ."

Unlike most of our statutory special funds, the balance of funds therein at the end of the given fiscal year, over and above administrative expenses, does not pass into the General Fund, but remains in the State Board of Barber Examiners' Fund to accumulate from year to year a continuing fund subject to biennial appropria-tions. But in answering your inquiries, we must look to the last biennial departmental appropriation bill, rather than to this blanket appropriation made by Section 27, Article 734a, Penal Code, of all moneys in the State Board of Barber Examiners' Fund for the purpose of carrying out the provisions of the Texas Barber Law, because the operation of the latter enactment, as an appropriation measure, is limited, by Article 8, Section 6, Constitution of Texas, to two years from the date of its enactment in 1929.

Senate Bill No. 138, Chapter 504, Acts Regular Session, 45th Legislature, being the departmental appropriation bill for the years ending August 31, 1938, and August 31, 1939, provides for the State Board of Barber Examiners, a budgeted appropriation for salaries and maintenance expenses in the total sum of $62,420.00 for each of said years, and provides additionally as follows:



"The foregoing amounts for the State Board of Barber Examiners are hereby appropriated out of the State Board of Barber Examiners Fund, composed of any balances on hand at the end of any preceding fiscal year and any fees and other receipts collected by said Board and deposited in said fund during and for each of the fiscal years ending August 31, 1938, and August 31, 1939, less transfers to the General Fund as provided by Statute and/or this appropriation Act. There is appropriated and ordered transferred Eighteen Hundred Seventy-five Dollars per year from the State Board of Barber Examiners Fund to the General Revenue Fund for the purpose of paying the cost of governmental services rendered to said Board by the State Departments supported by the General Fund."

Answering your second question first, it is our opinion that same should receive a negative answer. A ruling by this Department that the State Board of Barber Examiners could issue vouchers whereon warrants could lawfully issue, to cover salaries and administrative expenses incurred during the fiscal year ending August 31, 1939, but to be paid from moneys coming into the State Board of Barber Examiners' Fund from annual renewal fees after the termination of such fiscal year and during the succeeding fiscal year, would be tantamount to saying that the above cited departmental appropriation bill should be effective for a longer term than two years, in contravention of Article 8, Section 6, Constitution of Texas, providing, in part, that no appropriation of money shall be made for a longer term than two years.

In addition to this constitutional inhibition, we have Article 12, Revised Civil Statutes, providing, in part, that "the fiscal year of the State shall terminate on the 31st day of August of each year and appropriations of the State Government shall conform thereto."

Moreover, we have the express language of the above cited departmental appropriation bill, providing, in connection with the budget for the State Board of Barber Examiners, that the amounts so specifically itemized are appropriated out of the State Board of Barber Examiners' Fund, "composed of any balances on hand at the end of any preceding fiscal year and any fees and other receipts collected by said Board and deposited in said fund during and for each of the fiscal years ending August 31, 1938, and August 31, 1939," etc. Manifestly, annual renewal fees payable November 1, 1939, and allocated to the State Board of Barber Examiners' Fund after August 31, 1939, would not be within the foregoing appropriation, so as to be subject to warrants drawn pursuant to said appropriation for the biennium ending August 31, 1939.

Hon. N. J. Dartez, May 17, 1939, Page 4

Our negative answer to your second question also finds support in former opinions of this Department, one of which is a letter opinion of date December 16, 1931, written by Hon. Elbert Hooper, then Assistant Attorney General, and directed to Hon. C. V. Terrell, Chairman, Railroad Commission of Texas.

By your first question you ask if the State Board of Barber Examiners can operate without requesting any warrants to be issued against the State Board of Barber Examiners' fund until such time as there shall have been collected sufficient revenue to take care of outstanding obligations, and this might fairly be interpreted as a general statement of your second question, and embraced within its scope. However, assuming that you mean to inquire if the Board may lawfully incur obligations during a certain fiscal year, and issue warrants therefor against future revenues which it is anticipated will come into the State Board of Barber Examiners' fund during that _same_ fiscal year, we answer such question affirmatively.

The case of Ferguson, et al v. Johnson, et al, 57 S. W. (2d) 372, is authority for the proposition that obligations may be incurred and liabilities contracted for during any fiscal year by boards and commissions even though funds to pay warrants drawn in payment thereof are not at the time actually in the special fund in question, but it is reasonably anticipated that prospective revenues sufficient to meet such obligations, will come into such special funds during the same fiscal year. But as we read this case, it does not mean to say that a board or commission can anticipate prospective revenues for the succeeding fiscal year or any other fiscal year, except the one during which the obligations and expenses were incurred, and our answer to your first question is so limited.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Pat M. Neff, Jr._
Assistant

PLN:N

APPROVED

_____
ATTORNEY GENERAL OF TEXAS